**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| JAMES HENRY SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV112 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendant United States of America's Motion to Dismiss or in the Alternative Motion for Summary Judgment (Docket Entry 14), as well as for disposition of Defendant United States of America's Notice of Substitution (Docket Entry 13), Defendant United States of America's Motion to Strike Plaintiff's Second Response to Defendant United States of America's Motion to Dismiss or in the Alternative Motion for Summary Judgment (Docket Entry 23), and Plaintiff's Motion to Amend by Leave of Court (Docket Entry 25). (<u>See</u> Docket Entries dated June 24 and July 12, 2010; <u>see also</u> Fed. R. Civ. P. 72(a) and (b)(1).) For the reasons that follow, the Court will substitute the United States as the sole defendant, will treat Plaintiff's "second response" and motion to amend as amended responses to the motion to dismiss or for summary judgment by the United States, and

should dismiss this action for want of jurisdiction and, in the alternative, for failure to state a claim.

<u>BACKGROUND</u>

This case began when Plaintiff, a prisoner of the State of North Carolina, filed a Complaint on a form for actions under 42 U.S.C. § 1983. (Docket Entry 2.) The Complaint alleges that, on or about October 18, 2005, Plaintiff sought treatment from the Veterans Administration Medical Center in Salisbury, North Carolina ("Salisbury VAMC"), because he "was going through an emotional crisis when it occurred to [him] that [he] may be losing [his] mind." (<u>Id.</u> at 3.)[1] Upon arriving at the Salisbury VAMC, Plaintiff allegedly reported "homicidal and suicidal ideas," whereupon a psychiatrist (identified only as "Dr. Jane Doe") "screened" Plaintiff and asked him "why [he] wanted to hurt someone else or [him]self." (<u>Id.</u>)

According to the Complaint, Plaintiff "explained to [Dr. Jane Doe] that [his] life was spiraling out of control; [his] wife was having an affair and continuously lied about it, leaving [him] in a state of confusion, dismay and depression." (<u>Id.</u>) Plaintiff also allegedly told Dr. Jane Doe that he "would kill both [his] wife and her lover if [he] caught them together, that [he] was stressed out and couldn't deal with the situation[,] . . . that

_____

[1] This Memorandum Opinion utilizes standard capitalization conventions when quoting from Plaintiff's filings even where said filings do not.

[his] wife was spreading lies throughout the family, convincing them that [he] was delusional from excessive drug use, that she was having [him] followed and [that] she and her lover were plotting to kill [Plaintiff]." (Id.)

The Complaint further alleges that "Dr. Jane Doe dismissed [Plaintiff's] allegations as being frivolous and recommended that [he] enter [the Salisbury VAMC's] drug treatment program." (Id.) Plaintiff allegedly "accepted her recommendation" because he "wanted any help [he] could get" and, after receiving an appointment to begin the drug treatment program in January 2006, "was then discharged with no further attention given to [his] mental perceptions." (Id.) According to the Complaint, "[t]hree weeks later, on the evening of 11/7/05, [Plaintiff] encountered a situation that was overwhelming, [he] lost total control of [his] very being, the ability to rationalize, and [he] exploded into an uncontrollable fit of rage, by attacking [his] mother-in-law with a steak knife, stabbing her to death [and] . . . then attack[ing] [his] sister-in-law, stabbing her, causing her serious physical and emotional injury." (Id.)

In its remaining material allegations, the Complaint states:

1) "[o]n the morning of November 8, 2005, [Plaintiff] was arrested" (id.);

2) "[o]n or about November 10, 2005, [Plaintiff] was greeted by . . . [his] court-appointed [attorney, who] . . . questioned

-3-

[Plaintiff] about the previous events and decided to mount an insanity defense" (id.);

3) "[o]n or about November 29, 2005, a psychological assessment was initiated . . . [and Plaintiff] was then examined and or evaluated over a twenty-seven month period" (id. at 3-4);

4) "[o]n or about February 29, 2008, reports were completed; the diagnoses were a serious psychological disorder, delusions of mixed type" (id. at 4);

5) "[d]uring this period [Plaintiff's] condition continued to deteriorate . . . [and,] on or about April 7, 2008, [he] was ruled incompetent and committed to John Umstead Mental Hospital for treatment" (id.); and

6) "[o]n or about July 2008, after treatment, medication and intense counseling sessions, [Plaintiff] was found competent to proceed in the trial process" (id.).[2]

Based on the foregoing factual allegations, the Complaint asserts that:

1) "Dr. Jane Doe's total disregard to [Plaintiff's] history, symptoms and complaints seriously departed from the most fundamental standards of accepted medical practice, pertaining to

---

[2] The Complaint does not give the outcome of the trial, but a search of the public records of the North Carolina Department of Correction utilizing Plaintiff's name and the prisoner number he listed in the Complaint (see Docket Entry 2 at 4) revealed that Plaintiff received a total sentence of more than 30 years based on convictions for manslaughter, first-degree burglary, and assault with a deadly weapon inflicting serious injury, see http://webapps6.doc.state.nc.us/opi/offendersearch.do?method=view (last completed Oct. 13, 2011).

-4-

the diagnosis and treatment of [his] mental disorders, in lieu of an easier, cheaper and less efficient course of treatment" (id.);

2) "Dr. Jane Doe's evaluation and recommendation was inappropriate, grossly incompetent and recklessly inadequate, rising to a level of constitutional deprivation" (id.); and

3) "Dr. Jane Doe . . . and the United States Government [are] liable for the failure to exercise the proper treatment for [Plaintiff's] duressed state of mind and to provide adequate mental health care, which could have ultimately prevented this tragic catastrophic event from ever occurring" (id. at 5).

As a result, the Complaint seeks an "award for continued anxiety, annoyance, mental and emotional anguish, alienation of love by loss of family and friends, and for the loss of [his] freedom in the form of compensatory, exemplary and punitive damages in the total sum of $36,180,000.00." (Id. at 4.) It also asserts that Plaintiff filed a related administrative claim for "failure to provide adequate mental health care" on April 28, 2009, which was denied on September 4, 2009. (Id. at 2.)

Because Plaintiff was a prisoner seeking redress from government officials and because he wished to proceed in forma pauperis (see Docket Entry 1), the Court (per the undersigned Magistrate Judge) reviewed the Complaint under 28 U.S.C. §§ 1915A and 1915(e)(2) and determined that its factual allegations failed to state a claim under Section 1983, but conceivably pleaded

medical malpractice by an employee of the federal government, as to which the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671-2680, might provide Plaintiff a cause of action. (Docket Entry 3 at 3-7.) Given the mandate to construe a pro se complaint liberally, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), the Court treated the Complaint as brought under the FTCA and allowed it to proceed beyond initial screening, but without intimating any view about the ultimate viability of any such claim. (Docket Entry 3 at 7 & n.3.) The Court gave Plaintiff until March 26, 2010, to file with the Court a notice of any objection he had to the conversion of his claim from one brought under 42 U.S.C. § 1983 to one brought under the FTCA and advised him that a failure to give such notice within the time allowed would constitute consent to such conversion. (Id. at 7-8.) Plaintiff then made several filings with the Court prior to March 26, 2010, but did not object to the Court's treatment of his Complaint as asserting only a claim under the FTCA. (See Docket Entries 4-7.)

In its foregoing Order, the Court noted that actions under the FTCA lie only against the United States, but deferred any alteration of the case caption because formal substitution of the United States as the sole defendant could not occur prior to certification by the United States Attorney General that Dr. Jane Doe acted within the scope of her employment as to the matters at issue. (Docket Entry 3 at 7 n.3 (citing 28 U.S.C. § 2679(d)(1)).)

-6-

The United States subsequently filed a Notice of Substitution with the requisite certification. (Docket Entry 13.) Contemporaneously with that filing, it "move[d] to dismiss [P]laintiff's [C]omplaint for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6) . . . [or,] [i]n the alternative, . . . for summary judgment pursuant to Fed. R. Civ. P. 56." (Docket Entry 14 at 1.) In its related supporting brief, the United States argued that the Court should dismiss the Complaint on two separate grounds:

1) because Plaintiff failed to timely exhaust his administrative remedies (Docket Entry 15 at 6-11); and

2) because Plaintiff failed to include an Expert Witness Certification with his Complaint (id. at 11-18).

On May 20, 2010, immediately after the filing of the foregoing motion by the United States, the Clerk mailed Plaintiff a letter explaining that he had 30 days "to file a 20-page response in opposition to [said motion] . . . accompanied by affidavits setting out [his] version of any relevant disputed material facts or . . . other responsive material." (Docket Entry 16 at 1.) The letter specifically cautioned Plaintiff that a "failure to respond or, if appropriate, to file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that the defendant's contentions [we]re undisputed . . . ." (Id.)

In an undated letter, received by the Clerk's Office on June 3, 2010, Plaintiff requested an extension of time to respond. (See Docket Entry 17.) By Order dated June 7, 2010, the Court gave Plaintiff until July 6, 2010, to file his response. (See Docket Entry 18.) On June 10, 2010, the Clerk's Office received an envelope post-marked June 7, 2010 (see Docket Entry 19 at 1; Docket Entry 19-1 at 1) containing a filing (dated as mailed on May 28, 2010 (see Docket Entry 19 at 2, 8)) in which Plaintiff stated that he "d[id] not object to the Notice of Substitution but contend[ed] the Motion to Dismiss in Alternative Motion for Summary Judgment should be deny [sic]" (Docket Entry 19 at 2).[3] The United States timely filed its Reply on June 21, 2010. (See Docket Entry 20.)

On June 24, 2010, the Clerk's Office received another set of documents (dated as completed and/or mailed on June 17, 2010 (see Docket Entry 21 at 6; Docket Entry 22 at 2, 3)) that repeated nearly word-for-word the same statements as appeared in his earlier responsive documents. (Compare Docket Entry 19, with Docket Entries 21, 22.) The second filing materially differed from the first only in that, to the second, Plaintiff appended a "Forensic Psychological Report" dated February 26, 2008, from James H.

---

[3] In that envelope, Plaintiff actually submitted two separate documents, "Plaintiffs [sic] Response to the Defendants [sic] Motion to Dismiss in Alternative Motion for Summary Judgment" (Docket Entry 19 at 1-2) and a "Memorandum in Support of Plaintiffs [sic] Response to the Defendants [sic] Motion to Dismiss/Motion for Summary Judgment" (id. at 3-8). Because the Clerk's Office docketed the contents of the envelope as a single item, this Memorandum Opinion will cite to the page numbers assigned to the filing in the CM/ECF footer, rather than the independent pagination Plaintiff placed on the documents.

Hilkey, Ph.D. (Docket Entry 21-2 at 1-3)[4] and a "Preliminary Forensic Report" dated February 29, 2008, from Sally C. Johnson, M.D. (id. at 4-11).[5] By motion filed on June 25, 2010, the United States asked the Court to strike Plaintiff's "second response." (Docket Entry 23.) Plaintiff did not respond to said motion. (See Docket Entries dated June 25, 2010, to present.)

However, on July 12, 2010, the Clerk's Office received a document styled as a "Motion to Amend by Leave of Court" (dated as mailed on July 4, 2010 (see Docket Entry 25 at 4)) in which Plaintiff sought permission to present further argument and citation of authority about whether his Complaint "should be dismissed because, [sic] he failed to timely exhaust his administrative remedies" (id. at 1). The United States responded in opposition. (See Docket Entry 26.)

DISCUSSION

As set out above (supra, pp. 5-8), Plaintiff has agreed to the treatment of his Complaint as brought under the FTCA against only the United States.[6] In its Motion to Dismiss or in the Alternative Motion for Summary Judgment, the United States has sought dismissal

---

[4] The second and third pages of Dr. Hilkey's report appear in reverse order as docketed in the attachment to Plaintiff's filing.

[5] Plaintiff apparently mistakenly believes that he also attached these reports to his Complaint. (See Docket Entry 21 at 4; see also Docket Entry 2.)

[6] In light of that concession and the authority cited by the United States in its Notice of Substitution (see Docket Entry 13 at 1-2), the Court substitutes the United States as the sole defendant in this action and amends the caption accordingly.

-9-

of the Complaint, so construed, based on Plaintiff's failure to timely file an administrative claim and to append a certification from an expert witness to his Complaint (Docket Entry 15 at 6-18).

## Untimely Administrative Claim

The United States has moved, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss the Complaint for lack of subject matter jurisdiction on the ground that Plaintiff failed to "present[] [his FTCA claim] in writing to the appropriate Federal agency <u>within two years after such claim accrue[d]</u>," 28 U.S.C. § 2401(b) (emphasis added). (<u>See</u> Docket Entry 15 at 8-9.)[7]  In this regard, the United States has asserted that, "[a]lthough not every statute of limitations impacts subject matter jurisdiction, the FTCA's statute of limitations does." (<u>Id.</u> at 8 (internal citations omitted).)  "Statutes of limitations . . . represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." <u>United States v. Kubrick</u>, 444

---

[7] "[A] defendant may challenge subject matter jurisdiction in one of two ways.  First, the defendant may contend 'that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based.' . . .  In the alternative, the defendant can contend . . . 'that the jurisdictional allegations of the complaint are not true.'" <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009) (internal brackets and citations omitted) (quoting <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982)).  Because this motion by the United States falls into the former category, Plaintiff "'is afforded the same procedural protection as he would receive under a [Federal Rule of Civil Procedure] 12(b)(6) consideration.'  In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." <u>Id.</u> (internal citation omitted) (quoting <u>Adams</u>, 697 F.2d at 1219).

U.S. 111, 117 (1979) (internal quotation marks omitted). "[A]lthough affording plaintiffs what the legislature deems a reasonable time to present claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." Id.

"Section 2401(b), the limitations provision involved here, is the balance struck by Congress in the context of tort claims against the Government; and [courts] are not free to construe it so as to defeat its purpose, which is to encourage the prompt presentation of claims." Id. "[Courts] should also have in mind that the [FTCA] waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, [courts] should not take it upon [them]selves to extend the waiver beyond that which Congress intended." Id. at 117-18. "Neither, however, should [courts] assume the authority to narrow the waiver that Congress intended." Id. at 118. In light of the foregoing principles and the motion by the United States, the Court first must determine when Plaintiff's FTCA claim accrued.

*When Did Plaintiff's Claim Accrue under the FTCA?*

"As a general rule, FTCA claims follow the 'injury occurrence rule,' which defines the accrual date as the actual time of injury." Migliarese v. United States, 542 F. Supp. 2d 434, 438

-11-

(M.D.N.C. 2008). However, "the Supreme Court in Kubrick, created an exception to the general rule for medical malpractice cases [and held that in such cases] . . . the 'discovery rule,' also known as the 'diligence-discovery rule,' may apply." Id.; accord Holland v. United States, 302 F. Supp. 2d 484, 487 (M.D.N.C. 2004) ("In medical malpractice cases, where neither the injury nor its cause may be immediately apparent, the Supreme Court has adopted the 'discovery rule' or 'inquiry notice' standard.").

"Under the discovery rule, accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." Migliarese, 542 F. Supp. 2d at 438 (internal quotation marks omitted); accord Holland, 302 F. Supp. 2d at 487 ("The Court held in Kubrick that a medical malpractice claim accrues within the meaning of section 2401(b) when the plaintiff knows, or in the exercise of due diligence should have known, of both the existence and the cause of his injury."). "For a claim to accrue under Kubrick, a plaintiff need not know that the cause of injury was the result of negligence, . . . nor have a legal understanding of the nature of the claim." Holland, 302 F. Supp. 2d at 487; accord Kubrick, 444 U.S. at 121 (rejecting position that, "if a claim does not accrue until a plaintiff is aware of his injury and its cause, neither should it accrue until he knows or should suspect that the doctor who caused his injury was legally blameworthy"), 122 (holding that

once plaintiff knows "critical facts that he has been hurt and who
has inflicted the injury . . . [h]e is no longer at the mercy of
the latter . . . [because] [t]here are others who can tell him if
he has been wronged, and he need only ask"); Gould v. United States
Dep't of Health & Human Servs., 905 F.2d 738, 742 (4th Cir. 1990)
(en banc) (citing with approval this construction of Kubrick in
Dessi v. United States, 489 F. Supp. 722, 725 (E.D. Va. 1980):
"The action accrues even if the claimant believes that his injury
was unavoidable and did not indicate negligent treatment.").

The United States has asserted that, under Kubrick's discovery
rule, Plaintiff's FTCA claim accrued in October 2005 and that the
two-year limitations period therefore ran before Plaintiff filed
his administrative claim with the United States Department of
Veterans Affairs ("USDVA") in April 2009:

> Plaintiff knew in October 2005 that he had been screened
> for a drug treatment program and discharged "with no
> further attention given to [his] mental perceptions."
> When Plaintiff became aware of his alleged injury and its
> alleged cause, he was under a duty to investigate whether
> or not [the Salisbury VAMC] had negligently caused him to
> be released.  To be timely, Plaintiff should have pursued
> his cause of action for failure to provide adequate
> mental health care within two years of his seeing Dr.
> Jane Doe in October 2005.  Instead, Plaintiff waited
> until April 2009 to pursue his claim.

(Docket Entry 15 at 9 (internal citation omitted) (quoting Docket
Entry 2 at 3); see also Docket Entry 2 at 2 (stating in Complaint
that Plaintiff made administrative claim related to allegations in
Complaint on April 28, 2009); Docket Entry 15-2 (containing copy of

-13-

Plaintiff's administrative claim dated as signed on April 5, 2009, and stamped received by USDVA on April 28, 2009).) Moreover, anticipating that Plaintiff may "contend[] that the statute of limitations should not run against him due to his alleged incompetency following his arrest," the United States has argued "that a statute of limitations runs against all persons, even those under a disability, except where the statute expressly provides otherwise . . . [and] [t]his rule has been applied to the FTCA which contains a limitation period but no exception for disability." (Docket Entry 15 at 10.)

Consistent with the allegations in his Complaint (see Docket Entry 2 at 2), none of Plaintiff's filings opposing the instant motion by the United States contest that he failed to file an administrative claim with the USDVA until April 2009. (See Docket Entries 19, 21, 22, 25.)[8] Instead, Plaintiff has contended that because "he was declared incompetent by [Drs. Hilkey and Johnson] he could not have known of an injury upon which a [sic] action was

_____

[8] The Court declines the invitation by the United States to strike what it calls Plaintiff's "second response" (i.e., Docket Entries 21, 22) to its motion to dismiss/for summary judgment (see Docket Entries 23, 24) and, instead, will treat said filings as an amended version of Plaintiff's previously docketed response (Docket Entry 19). The content and timing of these and other filings (including Plaintiff's request for an extension of time to respond) together confirm that Plaintiff has not attempted to make two different responses opposing the motion of the United States for dismissal/summary judgment, but rather only to have the Court consider the reports of Drs. Hilkey and Johnson along with his arguments against that motion. Moreover, in support of its motion to strike, the United States did not articulate any prejudice it would suffer from the Court's consideration of said reports. (See Docket Entry 24 at 1-2.) The Court similarly deems Plaintiff's "Motion to Amend by Leave of Court" (Docket Entry 25) as a request to amend his prior filings opposing the motion to dismiss/for summary judgment by the United States, which the Court will grant, given the lack of prejudice articulated by the United States (see Docket Entry 26 at 1-3).

based." (Docket Entry 19 at 4; accord Docket Entry 21 at 2.)
Plaintiff's response elaborates on that point, in relevant part, as
follows:

> Plaintiff was declared incompetent to the extent that his
> mental illnesses prohibited his rational understanding
> and his mental disorder significantly interfere[d] with
> his ability to assist counsel in his defense. No court
> in the interest of justice should determine that
> Plaintiff knew or had reason to know of the injury which
> [sic] an action was based . . . .
>
> Plaintiff further contends that if . . . the statute of
> limitations runs against . . . even those under a
> disability except where the statute expressly provides
> otherwise . . .[,] the FTCA statute of limitations . . .
> has no exception for disability, and as a general rule
> mental incapacity does not toll the FTCA statute of
> limitation . . .[,] [t]here should be an exception
> applied to the FTCA [for veterans] suffering with post-
> traumatic stress disorder and being denied treatment with
> later determination by licenses [sic] psychologist,
> psychiatrist to be incompetent . . . .

(Docket Entry 19 at 5 (internal parentheses and quotation marks
omitted); accord Docket Entry 21 at 3-4.)

The allegations in the Complaint (detailed above, see supra,
pp. 2-5), however, establish that, on October 18, 2005, Plaintiff
had knowledge of the injury of which he now complains and its
cause, in that the Complaint confirms that on that date:

1) Plaintiff had the capacity to recognize that he suffered
from mental difficulties and to seek treatment;

2) Plaintiff learned that Dr. Jane Doe discounted his reports
of homicidal and suicidal ideations and, instead, proposed that he
pursue treatment for drug use;

-15-

3) Plaintiff accepted that recommendation because he preferred any help to no help; and

4) Plaintiff knew that the Salisbury VAMC scheduled him to enter a drug abuse program in January 2006 and released him without giving any additional attention to his mental health issues.

According to the Complaint, through the foregoing conduct on October 18, 2005, Dr. Jane Doe and the Salisbury VAMC failed to provide Plaintiff with "proper treatment for [his] duressed state of mind and to provide adequate mental health care" (Docket Entry 2 at 5), in that Dr. Jane Doe's "diagnosis and treatment of [Plaintiff's] mental disorders" and her "evaluation and recommendation" constituted medical malpractice (id. at 4). Plaintiff thus has complained of an _injury_ (i.e., a referral to treatment for drug use without any additional attention to his reported mental health problems) and the _cause_ of that injury (i.e., the recommendation of Dr. Jane Doe that Plaintiff pursue drug abuse treatment and the decision of the Salisbury VAMC to release him with only an appointment for such treatment), both of which he had notice of on October 18, 2005. Under the discovery rule, Plaintiff's FTCA claim therefore accrued on October 18, 2005, regardless of whether or not he then recognized the actions of Dr. Jane Doe and the Salisbury VAMC as negligent or then had any legal

-16-

understanding of his instant claim.  See Kubrick, 444 U.S. at 121-22; Gould, 905 F.2d at 742; Holland, 302 F. Supp. 2d at 487.[9]

Plaintiff's contentions regarding a subsequent determination (based on the reports of Drs. Hilkey and Johnson) that, for some period of time, he lacked the capacity to proceed to trial on criminal charges that arose from events in November 2005, does not alter the accrual date for Plaintiff's FTCA claim.  First, Drs. Hilkey's and Johnson's reports reach conclusions about Plaintiff's competency only as of their respective completion dates in February 2008, not about his competency on October 18, 2005.  (See Docket Entry 21-2 at 1-11.)  Further, the Complaint makes clear that, on October 18, 2005, regardless of any mental health issues he then may have had, Plaintiff understood that "Dr. Jane Doe dismissed [his] allegations [of homicidal and suicidal thinking] as being frivolous and recommended that [he] enter [the Salisbury VAMC's] drug treatment program," Plaintiff consciously accepted that recommendation because he "wanted any help [he] could get," and Plaintiff knew that the Salisbury VAMC released him without further attention to his mental health problems.  (Docket Entry 2 at 3.)

---

[9] Accordingly, to the extent Plaintiff has asserted that his FTCA claim failed to accrue for some period of time because "he has no legal education [and] was housed in a county jail with no access to legal material" (Docket Entry 19 at 4 (emphasis added); accord Docket Entry 21 at 2) and because he did not know "he had been wronged" by Dr. Jane Doe and the Salisbury VAMC until he learned Drs. Hilkey and Johnson had diagnosed him with a mental disorder (Docket Entry 25 at 2), his argument lacks merit.

-17-

Under these circumstances, no basis exists to conclude that Plaintiff lacked knowledge of the _injury_ about which he now complains and/or of its _cause_ on October 18, 2005. As a result, Plaintiff's FTCA claim accrued and the two-year statute of limitations in Section 2401(b) began to run on that date. That determination, however, still leaves the Court to decide if the doctrine of equitable tolling would allow Plaintiff to proceed despite the fact that he filed his administrative claim more than two years after October 18, 2005. See Rakes v. United States, 442 F.3d 7, 24 (1st Cir. 2006) ("[E]quitable tolling is not a rule about the accrual of a claim; equitable tolling instead halts the running of the clock once a claim has accrued.").

### Is Section 2401(b) Jurisdictional and Not Subject to Equitable Tolling?

According to the United States, "Plaintiff's failure to file his claim within two years of the alleged medical malpractice divests this Court of subject matter jurisdiction over Plaintiff's tort claims." (Docket Entry 15 at 10.) That position finds support in the decisions of the United States Court of Appeals for the Fourth Circuit, beginning with Kielwien v. United States, 540 F.2d 676, 679 (4th Cir. 1976), which declared that the FTCA's administrative exhaustion requirement, codified at 28 U.S.C. § 2675(a), "is jurisdictional and is not waivable." Although said decision did not address whether Section 2401(b)'s related two-year statute of limitations for filing an administrative claim was

-18-

jurisdictional in nature, see Kielwien, 540 F.2d at 679-81, six years later, the Fourth Circuit implicitly took that next logical step. See Wilkinson v. United States, 677 F.2d 998, 1000 (4th Cir. 1982) (stating that "the passage of two years without the filing of the administrative claim was fatal to [the plaintiff's FTCA] case," citing Kielwien, 540 F.2d at 679, and including in related parenthetical this quotation therefrom: "'That requirement is jurisdictional and is not waivable.'").

In June 1990, the Fourth Circuit made explicit what it had implied eight years earlier: "The applicable statute of limitation within the framework of the FTCA provides: 'A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . .' 28 U.S.C. § 2401(b). This time limitation is jurisdictional and nonwaivable. Kielwien, 540 F.2d at 679." Gould, 905 F.2d at 741 (emphasis added) (ellipses in original). The Gould Court then described Section 2401(b) as a "deliberate balance struck by Congress whereby a limited waiver of sovereign immunity is conditioned upon the prompt presentation of tort claims against the government" and construed Kubrick as having "recongiz[ed] this balance . . . [by] instruct[ing] the judiciary to abstain from extending or narrowing § 2401(b) beyond that which Congress intended and thereby defeating its obvious purpose." Id. Finally, the Gould Court cited with approval the view articulated

-19-

by other courts that "'strong _equitable_ considerations notwithstanding, the two-year limitation period of 28 U.S.C. § 2401(b) _cannot be tolled_ or waived.'" _Id._ (emphasis added) (quoting _Lien v. Beehner_, 453 F. Supp. 604, 606 (N.D.N.Y. 1978), and citing _United Mo. Bank South v. United States_, 423 F. Supp. 571, 577 (W.D. Mo. 1976), for proposition that the "limitation provision of FTCA [is] not to be extended by implication or by equitable considerations").

If this case had arisen immediately after the Fourth Circuit's ruling in _Gould_, this inquiry now would quickly end with a declaration that Section 2401(b) constitutes a jurisdictional requirement not subject to equitable tolling. However, in the 21 years since _Gould_'s issuance, the Supreme Court and the Fourth Circuit have rendered a number of other decisions (discussed below) that significantly complicate an assessment of whether Section 2401(b)'s time limitations implicate the Court's subject matter jurisdiction, such that Plaintiff could not rely on the doctrine of equitable tolling to save his FTCA claim.

_Irwin_ and _Muth_

Shortly after the Fourth Circuit decided _Gould_, the Supreme Court issued _Irwin v. Department of Veterans Affairs_, 498 U.S. 89 (1990), in which it addressed, inter alia, whether a jurisdictional bar arose from the requirement in 42 U.S.C. § 2000e-16(c) that a plaintiff pursuing a Title VII discrimination claim against the

United States file a complaint within 30 days of notice of final action by the Equal Employment Opportunity Commission ("EEOC"). The plaintiff in that case "contend[ed] that even if he failed to timely file, his error may be excused under equitable tolling principles. The [United States] Court of Appeals [for the Fifth Circuit] rejected this argument on the ground that the filing period contained in § 2000e-16(c) is jurisdictional, and therefore the District Court lacked authority to consider his equitable claims." Irwin, 498 U.S. at 93.

To reach that conclusion, the Fifth Circuit had "reasoned that § 2000e-16(c) applies to suits against the Federal Government and thus is a condition of Congress' waiver of sovereign immunity. Since waivers of sovereign immunity are traditionally construed narrowly, the [Fifth Circuit] determined that strict compliance with § 2000e-16(c) is a necessary predicate to a Title VII suit." Id. at 93-94. The Supreme Court agreed "that § 2000e-16(c) is a condition to the waiver of sovereign immunity and thus must be strictly construed," but otherwise rejected the Fifth Circuit's foregoing reasoning and its resulting conclusion. Id. at 94-96.

In so doing, the Supreme Court first observed that its "previous cases dealing with the effect of time limits in suits against the Government have not been entirely consistent, . . . [but that] in Soriano v. United States, 352 U.S. 270, [276] (1957), [it] held the petitioner's claim to be jurisdictionally barred,

-21-

saying that 'Congress was entitled to assume that the limitation period it prescribed meant just that period and no more.'" <u>Irwin</u>, 498 U.S. at 94 (internal parallel citation omitted).  The Supreme Court then declined to distinguish between the forcefulness of the language in the statute of limitations at issue in <u>Soriano</u> and in Section 2000e-16(c), because "a continuing effort on [its] part to decide each case on an ad hoc basis, as [it] appear[ed] to have done in the past, would have the disadvantage of continuing unpredictability without the corresponding advantage of greater fidelity to the intent of Congress." <u>Id.</u> at 95.

Instead, the Supreme Court "took the opportunity to adopt a more general rule to govern the applicability of equitable tolling in suits against the Government." <u>Id.</u>  Specifically, it declared that "[t]ime requirements in lawsuits between private litigants are customarily subject to 'equitable tolling' . . . [and] the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." <u>Id.</u> at 95-96.  According to the Supreme Court, "[o]nce Congress has made [a sovereign immunity] waiver, . . . making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver." <u>Id.</u> at 95.  Moreover, if Congress does not want equitable

-22-

tolling to apply to a particular limitations period, it "may provide otherwise if it wishes to do so." Id. at 96.[10]

The Supreme Court then declined to find any basis for equitable tolling in the case before it, where the plaintiff "urge[d] that his failure to file in a timely manner should be excused because his lawyer was absent from his office at the time that the EEOC notice was received, and that he thereafter filed within 30 days of the day on which he personally received notice." Id. at 96. In rendering that judgment, the Supreme Court observed that "[f]ederal courts have typically extended equitable relief only sparingly[, that it had] . . . allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass[, and that those] . . . principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." Id. (internal footnotes omitted).

---

[10] In announcing this new approach to the intersection of statutes of limitations and principles of sovereign immunity, the Irwin Court did not mention its decision earlier that same year in which it stated the following:

> Under settled principles of sovereign immunity, the United States, as sovereign, is immune from suit, save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit. A statute of limitations requiring that a suit against the Government be brought within a certain time period is one of those terms.

United States v. Dahm, 494 U.S. 596, 609 (1990) (internal citations, ellipses, and quotation marks omitted) (emphasis added).

-23-

Shortly after the Supreme Court's ruling in _Irwin_, some courts explicitly construed said decision as foreclosing any argument that Section 2401(b) established a jurisdictional requirement not susceptible to equitable tolling. _See, e.g._, _Glarner v. United States Dep't of Veterans Admin._, 30 F.3d 697, 701 (6th Cir. 1994) (citing interpretation of _Irwin_ in _Schmidt v. United States_, 933 F.2d 639, 640 (8th Cir. 1991)). The Fourth Circuit impliedly took the same view in _Muth v. United States_, 1 F.3d 246, 250-51 (4th Cir. 1993), when — instead of invoking _Gould_'s language treating Section 2401(b) as jurisdictional and echoing admonishments against any tolling of the two-year limitations period — it entertained (but ultimately denied) an FTCA plaintiff's effort "to further wrangle its way around [Section 2401(b)] by arguing . . . the theory of equitable tolling of the limitations period." The _Muth_ Court, however, expressly restricted the type of equitable tolling available as follows: "To invoke the doctrine, [the plaintiff] must show that the 'defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge.'" _Id._ at 251 (quoting _English v. Pabst Brewing Co._, 828 F.2d 1047, 1049 (4th Cir. 1987)).

### _Brockamp_ and _Kokotis_

Four years after the Fourth Circuit's ruling in _Muth_, the Supreme Court, in _United States v. Brockamp_, 519 U.S. 347 (1997), considered the question of when — despite the presumption

-24-

(recognized in _Irwin_) that equitable tolling applies to limitations periods in statutes authorizing suit against the United States — a statute nonetheless would preclude such tolling. In _Brockamp_, the plaintiffs had "paid the Internal Revenue Service (IRS) several thousand dollars that [they] did not owe . . . [and] filed an administrative claim for refund several years after the relevant statutory time period for doing so had ended." _Id._ at 348. Following the denial of those administrative claims, the plaintiffs filed a tax refund suit and "asked the court to extend the relevant statutory time period [under 26 U.S.C. § 6511] for an 'equitable' reason, namely, the existence of a mental disability . . . ." _Id._

Although the _Irwin_ Court had noted that the Supreme Court previously had embraced equitable tolling in only two circumstances (neither of which included anything akin to mental disability), _see_ _Irwin_, 498 U.S. at 96, the _Brockamp_ Court "assume[d] [a plaintiff's mental disability] would permit a court to toll the statutory limitations period if . . . § 6511 contain[ed] an implied 'equitable tolling' exception," _Brockamp_, 519 U.S. at 348-49 (internal emphasis omitted). The Supreme Court further assumed that, pursuant to _Irwin_'s rebuttable presumption, equitable tolling would apply to Section 6511's limitations period unless a "good reason [existed] to believe that Congress did _not_ want the equitable tolling doctrine to apply[.]" _Id._ at 350 (italics in

-25-

original).  It then found the following "strong reasons for answering [that] question in the Government's favor," id.:

1) "Section 6511 sets forth its time limitations in unusually emphatic form . . . [and] in a highly detailed manner that, linguistically speaking, cannot easily be read as containing implicit exceptions," id.;

2) Section 6511 "reiterates its limitations several times in several different ways," id. at 351; and

3) Section 6511 "sets forth explicit exceptions to its basic time limits, and those very specific exceptions do not include 'equitable tolling,'" id.

In addition to these textual reasons to conclude "that Congress did not intend courts to read . . . 'equitable' exceptions into the statute that it wrote," id. at 352, the Supreme Court emphasized that, given the large volume of tax returns handled by the IRS, "read[ing] an 'equitable tolling' exception into § 6511 could create serious administrative problems by forcing the IRS to respond to, and perhaps litigate, large numbers of late claims, accompanied by requests for 'equitable tolling,' which upon close inspection, might turn out to lack sufficient equitable justification." Id. According to the Supreme Court:

> The nature and potential magnitude of the administrative problem suggest that Congress decided to pay the price of occasional unfairness in individual cases (penalizing a taxpayer whose claim is unavoidably delayed) in order to maintain a more workable tax enforcement system.  At the least it tells us that Congress would likely have wanted

-26-

to decide explicitly whether, or just where and when, to expand the statute's limitations periods, rather than delegate to the courts a generalized power to do so wherever a court concludes that equity so requires.

Id. at 352-53.

In the wake of Brockamp, a few courts began asking whether requirements applicable to "administrative claims under the FTCA should be treated [like the requirements for the employment discrimination claims at issue in Irwin or] . . . more like the conditions attached to claims for tax refunds [at issue in Brockamp]," Kanar v. United States, 118 F.3d 527, 530 (7th Cir. 1997), and reached differing conclusions, compare, e.g., Perez v. United States, 167 F.3d 913, 917 (5th Cir. 1999) (holding that "neither of the factors [i.e., the text of the limitations provision and the scope of the administrative disruption] identified in Brockamp as supporting a conclusion that the [limitations] provision was jurisdictional applies [to Section 2401(b)]" such that the "presumption of Irwin that the government is subject to equitable tolling" controls),[11] with, e.g., Wukawitz v. United States, 170 F. Supp. 2d 1165, 1169-70 (D. Utah 2001) (ruling that Section 2401(b)'s "unusually emphatic language, like the statutory language at issue in Brockamp, demonstrates that

---

[11] The Fifth Circuit has since adopted the opposite position. See In re FEMA Trailer Formaldehyde Prods. Liab. Litig., 646 F.3d 185, 189-91 (5th Cir. 2011) (holding that "FTCA's statute of limitations is jurisdictional" and not subject to equitable tolling).

Congress did not intend for the limitations period to be regarded as containing an implied equitable tolling exception").

When next confronted with a plaintiff who sought to invoke equitable tolling to avoid dismissal of her FTCA claim, the Fourth Circuit did not cite Brockamp, but did expressly describe Section 2401(b) as "[a] key jurisdictional prerequisite to filing suit under the FTCA [that] involves the presentation of an administrative claim to the government within two years of the incident." Kokotis v. United States Postal Serv., 223 F.3d 275, 278 (4th Cir. 2000) (emphasis added). However, despite attributing jurisdictional significance to Section 2401(b), the Kokotis Court took the same approach as the Muth Court had, i.e., it did not declare equitable tolling inapplicable, but instead held that, "because of the importance of respecting limitations periods, equitable tolling is appropriate only 'where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action.' Indeed, the doctrine of equitable tolling is based on the view that a defendant should not be encouraged to engage in 'misconduct that prevents the plaintiff from filing his or her claim on time.'" Id. at 280-81 (internal citations omitted) (quoting English, 828 F.2d at 1049, and citing Muth, 1 F.3d at 251). Because "no evidence or allegation of misconduct by the Postal Service exist[ed]," the Fourth Circuit declined "to equitably toll [the] limitations period." Id. at 281.

Kontrick and Bowles

A little over three years after the Fourth Circuit decided Kokotis, the Supreme Court, in Kontrick v. Ryan, 540 U.S. 443, 447 (2004), addressed whether Federal Rule of Bankruptcy Procedure 4004's "time prescription . . . is 'jurisdictional, i.e., dispositive whenever raised in the proceedings." The Kontrick Court began its discussion by observing that "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction . . . [and that] Congress did so with respect to bankruptcy courts in Title 28 [which includes] . . . [c]ertain statutory provisions . . . contain[ing] built-in time constraints." Id. at 453. In a footnote, the Kontrick Court then specifically identified Section 2401(b) and the statutory provision setting a 30-day limit for civil appeals, 28 U.S.C. § 2107(a), as "[p]rovisions of similar order, with built-in time constraints . . . ." Kontrick, 540 U.S. at 453 n.8. It thereafter concluded that Federal Rule of Bankruptcy Procedure 4004's time limitation (which lacked a statutory counterpart) failed to qualify as "jurisdictional" (or otherwise sufficiently inflexible as to trump forfeiture occasioned by non-assertion). Id. at 454.

Another three years later, in Bowles v. Russell, 551 U.S. 205 (2007), the Supreme Court turned its attention to whether the time limit within Section 2107(a) — the same statutory limitation that, in a footnote in Kontrick, it had directly equated with Section

-29-

2401(b)'s time limit — imposed a jurisdictional restriction on federal courts. In concluding that Section 2107(a) <u>did</u> create a jurisdictional time bar, the <u>Bowles</u> Court noted that "several of [the Supreme Court's] recent decisions ha[d] undertaken to clarify the distinction between claims-processing rules and jurisdictional rules, . . . [but that] those decisions have also recognized the <u>jurisdictional significance of the fact that a time limitation is set forth in a statute</u>." <u>Id.</u> at 210 (emphasis added).

As an example, it set forth the following:

> In <u>Kontrick</u>, we held that failure to comply with the time requirement in Federal Rule of Bankruptcy Procedure 4004 did not affect a court's subject-matter jurisdiction. Critical to our analysis was the fact that no statute specifie[d] a time limit for filing a complaint objecting to the debtor's discharge. Rather, the filing deadlines in the Bankruptcy Rules are procedural rules adopted by the Court for the orderly transaction of its business that are not jurisdictional. Because only Congress may determine a lower federal court's subject-matter jurisdiction, it was improper for courts to use the term jurisdictional to describe emphatic time prescriptions in rules of court. <u>As a point of contrast, we noted that § 2107 contains the type of statutory time constraints that would limit a court's jurisdiction</u>.

<u>Id.</u> at 210-11 (emphasis added) (internal brackets, citations, ellipses, and quotation marks omitted).

On the foregoing, highlighted point, the <u>Bowles</u> Court cited directly to the footnote in <u>Kontrick</u> that listed Section 2401(b) and Section 2107(a) as "[p]rovisions of similar order," <u>Kontrick</u>, 540 U.S. at 453 n.8. <u>See</u> <u>Bowles</u>, 551 U.S. at 211. It then further explained that "<u>[j]urisdictional treatment of statutory time limits</u>

makes good sense. Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider. Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them." Id. at 212-13 (emphasis added). Finally, in refusing to excuse the litigant's failure to timely comply with Section 2107(a), the Bowles Court made clear that courts, including the Supreme Court, "ha[ve] no authority to create equitable exceptions to jurisdictional requirements . . . ." Id. at 214.

In sum, a fair reading of Bowles (and particularly its interpretation of Kontrick) leads to the firm conclusion that the Supreme Court, at least in dicta, has denominated Section 2401(b)'s time limitation as jurisdictional in nature.[12] Moreover, Bowles expressly holds that equitable tolling cannot apply to jurisdictional time limits.

John R. Sand & Gravel and Henderson

Less than a year after deciding Bowles, the Supreme Court issued John R. Sand & Gravel Co. v. United States, 552 U.S. 130 (2008), yet another opinion dealing with the proper treatment of a statute of limitations, on this occasion one applicable to claims

---

[12] Two different district judges in a neighboring district and a magistrate judge in New York recently have construed footnote eight in Kontrick as supporting the view that Section 2401(b) imposes a jurisdictional time bar. Fischer v. United States, No. 5:09CT3048D, 2011 WL 285233, at *3 & n.1 (E.D.N.C. Jan. 26, 2011) (Dever, J.) (unpublished); Barnes v. United States, No. 5:08CT3171BO, 2010 WL 2553516, at *2 (E.D.N.C. June 23, 2010) (Boyle, J.) (unpublished); Harrison v. Lutheran Med. Ctr., No. 05CV2059(CBA)(LB), 2010 WL 3924292, at *3 (E.D.N.Y. Mar. 23, 2010) (unpublished).

against the United States in the Court of Federal Claims.  In that decision, the Supreme Court offered the following summary as to when statutes of limitations carry jurisdictional significance:

> Most statutes of limitations seek primarily to protect defendants against stale or unduly delayed claims.  Thus, the law typically treats a limitations defense as an affirmative defense that the defendant must raise at the pleadings stage and that is subject to rules of forfeiture and waiver.  Such statutes also typically permit courts to toll the limitations period in light of special equitable considerations.
>
> Some statutes of limitations, however, seek not so much to protect a defendant's case-specific interest in timeliness as to achieve <u>a broader system-related goal, such as facilitating the administration of claims, limiting the scope of a governmental waiver of sovereign immunity, or promoting judicial efficiency</u>.  The Court has often read the time limits of these statutes as more absolute, say as requiring a court to decide a timeliness question despite a waiver, or as forbidding a court to consider whether certain equitable considerations warrant extending a limitations period. As convenient shorthand, the Court has sometimes referred to the time limits in such statutes as "jurisdictional."

Id. at 133-34 (internal citations omitted) (emphasis added).  The Supreme Court then observed that its prior precedent had "interpreted the court of claims limitations statute as setting forth this second, more absolute, kind of limitations period," id. at 134, and declined, based largely on principles of stare decisis, to abandon that approach notwithstanding Irwin, id. at 136-39.

Finally, earlier this year, the Supreme Court again took on the issue of when a time limitation carries "jurisdictional" force in Henderson ex rel. Henderson v. Shinseki, ___ U.S. ___, 131 S. Ct. 1197 (2011), a case involving the 120-day statutory deadline

-32-

for appeals to the United States Court of Appeals for Veterans Claims, 38 U.S.C. § 7266. After outlining some of the significant effects that arise from a decision to treat a requirement as jurisdictional, the Henderson Court observed that, "[b]ecause the consequences that attach to the jurisdictional label may be so drastic, . . . a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity . . . [and] [o]ther rules, even if important and mandatory, . . . should not be given the jurisdictional brand." Henderson, 131 S. Ct. at 1202-03.

It then laid down the following principles:

1) in general, requirements "that should not be described as jurisdictional [include] . . . 'claim-processing rules' . . . [i.e.] rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," id. at 1203;

2) "[f]iling deadlines . . . are quintessential claim-processing rules," but may nonetheless qualify as jurisdictional, because "Congress is free to attach the conditions that go with the jurisdictional label to a rule that [the Supreme Court] would prefer to call a claim-processing rule," id.;

3) in reviewing a particular filing deadline, "[t]he question . . . therefore [becomes] whether Congress mandated that [said] deadline be 'jurisdictional'" id.; and

4) "Congress, of course, need not use magic words in order to speak clearly on this point . . . [and] [c]ontext, including th[e] [Supreme] Court's interpretation of similar provisions in many years past, is relevant" <u>id.</u>

"With these principles in mind, [the <u>Henderson</u> Court] consider[ed] whether Congress clearly prescribed that the deadline for filing a notice of appeal with the Veterans Court should be 'jurisdictional,'" <u>id.</u>, and concluded that Congress did not, <u>id.</u> at 1204-06.  In reaching that statutory interpretation, the <u>Henderson</u> Court expressly placed significant weight on "'the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor.'" <u>Id.</u> at 1206 (quoting <u>King v. St. Vincent's Hosp.</u>, 502 U.S. 215, 220-21 n.9 (1991)).

### Summary

The Supreme Court clearly and recently (i.e., after <u>Irwin</u>) has indicated (albeit in dicta) that it views Section 2401(b)'s time limitation as jurisdictional.  <u>See Bowles</u>, 551 U.S. at 211; <u>Kontrick</u>, 540 U.S. at 453 n.8.  The most recent Fourth Circuit precedent directly addressing the question similarly held that Section 2401(b) imposes a jurisdictional time bar.  <u>See Kokotis</u>, 223 F.3d at 278.  Nothing in <u>John R. Sand & Gravel</u> or <u>Henderson</u>, the two, above-discussed Supreme Court decisions rendered since the issuance of <u>Kokotis</u>, <u>Kontrick</u>, and <u>Bowles</u>, demands a different determination.  To the contrary, the time limits in Section 2401(b)

-34-

easily fit within the category of statutory limitations periods that carry jurisdictional force as defined by the Supreme Court in John R. Sand & Gravel, 552 U.S. at 133-34, in that Section 2401(b) does not simply serve the interest of "protect[ing] defendants against stale or unduly delayed claims," but instead also significantly serves "broader system-related goal[s]."[13] Moreover, unlike in Henderson, 131 S. Ct. at 1206, where a unique canon of statutory construction strongly favored a finding that Congress did not intend to mandate jurisdictional treatment of a limitations period, the undersigned Magistrate Judge has failed to uncover any comparable doctrine that would counsel in favor of treating the FTCA's statutory time limits as non-jurisdictional. Finally, although in Kokotis (and its precursor Muth), the Fourth Circuit permitted a limited form of equitable tolling as to Section 2401(b) notwithstanding its jurisdictional significance, the Supreme Court

_____

[13] For example, Section 2401(b)'s time limit on the filing of an administrative claim with the relevant federal agency helps insure that the administrative review process (that must precede and can help avoid resort to litigation) can occur promptly, thereby "facilitating the administration of claims . . . [and] promoting judicial efficiency," John R. Sand & Gravel, 552 at 133. In addition, the limitations period in Section 2401(b) serves the "broader system-related goal" of "limiting the scope of a governmental waiver of sovereign immunity," id. Indeed, those very considerations led the United States Court of Appeals for the Ninth Circuit to conclude that Section 2401(b) imposes a jurisdictional time bar not subject to equitable tolling. See Marley v. United States, 567 F.3d 1030, 1036 (9th Cir. 2008); see also Jones v. United States, 691 F. Supp. 2d 639, 641 (E.D.N.C. 2010) (citing Marley and John R. Sand & Gravel in support of conclusion "that the FTCA limitations period is not subject to equitable tolling"); Bohrer v. City Hosp., Inc., 681 F. Supp. 2d 657, 673-75 (N.D.W. Va. 2010) (finding, based on close analysis of John R. Sand & Gravel, "that equitable tolling is likely not available in FTCA cases"); but see Santos ex rel. Beato v. United States, 559 F.3d 189, 196-97 (3d Cir. 2009) (ruling "that equitable tolling is possible under the FTCA, [but] recogniz[ing] that the reasoning in certain recent Supreme Court decisions [including John R. Sand & Gravel] might call [that conclusion] into question").

-35-

subsequently and definitively has held that courts "ha[ve] no authority to create equitable exceptions to jurisdictional requirements," Bowles, 551 U.S. at 214.[14]

Under these circumstances, the Court should conclude that the two-year statute of limitations in Section 2401(b) constitutes a jurisdictional bar not subject to equitable tolling and should dismiss the Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because Plaintiff's allegations indisputably establish that his FTCA claim accrued on October 18, 2005, and that he failed to file an administrative claim with the USDVA until April 2009.

### Lack of Expert Witness Certification

Alternatively, the United States has moved under Federal Rule of Civil Procedure 12(b)(6)[15] for the Court to dismiss the Complaint for failure to state a claim upon which relief may be granted based on the absence of a certification that an expert witness had reviewed the medical care about which Plaintiff complained and would testify that said care fell below applicable professional standards. (See Docket Entry 15 at 11-18.) "In this federal tort

---

[14] Nor, contrary to Plaintiff's suggestion, do 42 U.S.C. § 1997(e), N.C. Gen. Stat. § 148-118, et seq., or McCarthy v. Madigan, 503 U.S. 140 (1992), support a contention that "[t]his Court can also waive any exhaustion requirements if it finds such waiver to be in the interest of justice" (Docket Entry 19 at 4; accord Docket Entry 21 at 3). Simply put, said statutes and decision have nothing to do with the FTCA's exhaustion requirement.

[15] Motions brought under this Rule require the Court to "accept[] all well-pled facts [in the Complaint] as true and [to] construe[] these facts in the light most favorable to the plaintiff," Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

claims action, arising out of events occurring in North Carolina, the law of that state controls." Iodice v. United States, 289 F.3d 270, 274 (4th Cir. 2002).  Under North Carolina law:

> Any complaint alleging medical malpractice by a health care provider . . . in failing to comply with the applicable standard of care . . . shall be dismissed unless:
>
> (1) The pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
>
> (2) The pleading specifically asserts that the medical care has been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or
>
> (3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. Gen. Stat. § 1A-1, Rule 9(j).

Plaintiff has not disputed that his Complaint lacks an expert certification of the sort prescribed by Section 1A-1, Rule 9(j). (See Docket Entry 19 at 6-7; Docket Entry 21 at 4-5; Docket Entry 25 at 1-3.)  Instead, Plaintiff has offered three arguments to ward off dismissal for failing to include such a certification:

1) the reports of Drs. Hilkey and Johnson (Docket Entry 21-2 at 1-11) provide a sufficient substitute for an expert witness certification because "they testified under oath [presumably at his

-37-

criminal case] that Plaintiff was at all times in question
incompetent/suffered with a metal [sic] illness, and will be called
to testify on behalf of [Plaintiff] in any and all proceedings,"
(Docket Entry 21 at 4; accord Docket Entry 19 at 6);

2) "[Section] 1A-1, Rule 9(j) certification requirements
violates [sic] Article I, Section 18 of the NC Constitution, since
it impairs, unduly burdens, and in some instances prohibits the
filing of any medical malpractice claim where the injured party is
unable to timely find an expert, or is without funds, and . . .
violates the equal protection clause of both state and federal
Constitutions, since it dose [sic] not reflect the least
restrictive method for the asserted state interest of preventing
frivolous lawsuits" (Docket Entry 21 at 5; accord Docket Entry 19
at 6); and

3) "the doctrine of res ipsa loquitor [sic] can apply, because
Plaintiff is able to establish, without benefit of expert
testimony, that an injury would not typically occur in the absence
of some negligence by the defendant" (Docket Entry 21 at 5; accord
Docket Entry 19 at 6-7).

These contentions lack merit. First, neither the reports of
Drs. Hilkey and Johnson nor Plaintiff's responsive filings reflect
that they reviewed the "medical care" Plaintiff received from Dr.
Jane Doe and the Salisbury VAMC on October 18, 2005, or that they
will testify that such care fell below applicable professional

-38-

standards. Second, the sole authority Plaintiff cited in support

of his constitutional challenge(s) to Section 1A-1, Rule 9(j),

Anderson v. Assimos, 146 N.C. App. 339, 553 S.E.2d 63 (2001) (see

Docket Entry 21 at 5; accord Docket Entry 19 at 6), was vacated by

the North Carolina Supreme Court, see Anderson v. Assimos, 356 N.C.

415, 572 S.E.2d 101 (2002).[16]

Third, "'for res ipsa loquitur to apply, the negligence

complained of must be of the nature that a jury — through common

knowledge and experience — could infer.'" Stevenson v. North

Carolina Dep't of Corr., ___ N.C. App. ___, ___, 714 S.E.2d 435,

437 (2011) (ruling that allegation that "examination was inadequate

because it only consisted of what plaintiff characterized as a

'cursory' glance at the infected area is not the type of negligence

that a jury could infer through common knowledge and experience[,]

---

[16] To the extent Plaintiff relies on the arguments set forth in the now-vacated decision of the North Carolina Court of Appeals as grounds to find a conflict between North Carolina law and the United States Constitution and/or the North Carolina Constitution, the undersigned Magistrate Judge finds such contentions unpersuasive for reasons stated in the dissent from said now-vacated decision, see Anderson, 146 N.C. App. at 348-50, 553 S.E.2d at 69-71; see also DiAntonio v. Northampton-Accomack Mem'l Hosp., 628 F.2d 287, 291-92 (4th Cir. 1980) (applying rational basis test in rejecting equal protection challenge to Virginia pre-filing requirement for medical malpractice claims). Moreover, federal courts generally refrain from declaring state laws invalid under state constitutions. See, e.g., Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 547 (1949) (ruling that question of whether state statute violated state constitution "is ultimately for the state courts, and since they have made no contrary determination, [federal courts] shall presume . . . that the statute conforms with the state constitution"); Pullman Co. v. Knott, 235 U.S. 23, 27 (1914) ("[A]s we are dealing with the validity of the law under the state Constitution, a matter that must be decided finally by the state court, . . . we are of opinion that if this act is to be overthrown, it should not be overthrown by us."); Karpark Corp. v. Town of Graham, 99 F. Supp. 124, 128 (M.D.N.C. 1951) ("The Supreme Court of North Carolina has not passed upon the constitutionality of the statute in question . . . and thereupon in the absence of such, I am regarding the statute . . . as a properly enacted law by the General Assembly of North Carolina."), aff'd, 194 F.2d 616 (1952).

. . . [e]xpert testimony would be required in order to determine whether . . . examination was sufficient under the applicable standard of care, and as a result, plaintiff's claim also failed to establish negligence under the doctrine of res ipsa loquitur") (quoting <u>Diehl v. Koffer</u>, 140 N.C. App. 375, 378-79, 536 S.E.2d 359, 362 (2000)). "North Carolina courts have applied res ipsa to injuries involving gross negligence, such as surgical instruments left in the patient's body and injuries obviously remote from the site of a surgery," <u>Wright v. United States</u>, 280 F. Supp. 2d 472, 481 (M.D.N.C. 2003) (internal citations omitted), but have ruled expert testimony "necessary to prove whether or not [a doctor] breached the psychiatric standard of practice," <u>Gregory v. Kilbride</u>, 150 N.C. App. 601, 608, 565 S.E.2d 685, 691 (2002).[17]

Accordingly, the Court, in the alternative, should dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim based on the lack of the expert witness

---

[17] Other jurisdictions similarly have rejected reliance on res ipsa loquitur for claims related to mental health treatment. <u>See, e.g.</u>, <u>Williams v. New Beginnings Residential Care Home</u>, 225 P.3d 17, 26-30 (Okla. Civ. App. 2009); <u>Hunsaker v. Bozeman Deaconess Found.</u>, 588 P.2d 493, 506 (Mont. 1978); <u>see also</u> <u>McGrady v. United States</u>, 650 F. Supp. 379, 381 (D.S.C. 1986) ("The fact that [an individual] killed two persons following his visit at the VA does not, ipso facto, lead to such a conclusion that the [VA's] medical personnel . . . [were] negligent in [their] clinical consultation and assessment of the stability of [that individual's] mental condition."); <u>Ellis v. United States</u>, 484 F. Supp. 4, 11 (D.S.C. 1978) ("There can be no finding of a deviation from the generally accepted standards, practices, and procedures in a medical malpractice action in the absence of expert testimony to support it unless the subject matter of the action lies within the ambit of common experience so that no special learning is needed to evaluate the physician's conduct. Because of the elusive qualities of mental disorders and the difficulty of analyzing and evaluating them, and because of the uncertainty of diagnoses in this field and the tentativeness of professional judgment, expert medical testimony is required to support plaintiff's claim in this case." (internal citation omitted)).

certification required by North Carolina law, just as this Court and other federal courts in North Carolina have done under analogous circumstances in numerous prior cases, <u>see, e.g.</u>, <u>Shipley v. Dep't of Justice Bureau of Prisons</u>, No. 5:10CR3153FL, 2011 WL 4101502, at *5-6 (E.D.N.C. Sept. 14, 2011) (Flanagan, C.J.) (unpublished); <u>Alfaro v. United States</u>, No. 5:09CT3073D, 2011 WL 561320, at *4-5 (E.D.N.C. Feb. 8, 2011) (Dever, J.) (unpublished), <u>aff'd</u>, No. 11-6300, 2011 WL 3022244 (4th Cir. July 25, 2011) (unpublished); <u>Ward v. United States</u>, No. 5:07CV383BO, 2008 WL 4772189, at *2-3 (E.D.N.C. Oct. 23, 2008) (Boyle, J.) (unpublished); <u>Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 641, 649 (M.D.N.C. 2004) (Beaty, J., adopting recommendation of Dixon, M.J.).

CONCLUSION

As Plaintiff has conceded, the FTCA requires that the Court substitute the United States as the sole defendant. Plaintiff's "second response" and motion to amend constitute amended responses to the motion to dismiss/for summary judgment by the United States, which the Court has accepted. Plaintiff's failure to submit a timely administrative claim renders his FTCA claim jurisdictionally barred under Section 2401(b) and, alternatively, the lack of an expert witness certification as required by North Carolina law causes said claim to fail as a matter of law.

-41-

**IT IS THEREFORE ORDERED** that Defendant United States of America's Notice of Substitution (Docket Entry 13) is **GRANTED**, the United States is substituted as the sole defendant in this case, and the caption is altered accordingly.

**IT IS FURTHER ORDERED** that Defendant United States of America's Motion to Strike Plaintiff's Second Response to Defendant United States of America's Motion to Dismiss or in the Alternative Motion for Summary Judgment (Docket Entry 23) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend by Leave of Court (Docket Entry 25) is **GRANTED** in that said filing is accepted as an amended response to Defendant United States of America's Motion to Dismiss or in the Alternative Motion for Summary Judgment.

**IT IS RECOMMENDED** that Defendant United States of America's Motion to Dismiss or in the Alternative Motion for Summary Judgment (Docket Entry 14) be **GRANTED**, and that this action be **DISMISSED** under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 14, 2011

-42-